# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ian H. Levin | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8653 | **DATE** | 10/21/2003 |
| **CASE TITLE** | Alan L. Curtis vs. Jo Anne B. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order on plaintiff's motion for summary judgment. Plaintiff's motion for summary judgment [9-1] is granted in so far as it requests a remand of the ALJ's decision. The defendant's motion for summary judgment is denied. The cause is hereby remanded to the Commissioner of Social Security for further proceedings consistent with this opinion. Judgment is entered pursuant to Rule 58 F.R.C.P.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | OCT 2 2 2003 date docketed | 20 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 OCT 21 PM 5:05 | 10/21/03 date mailed notice | |
| SM courtroom deputy's initials | | Date/time received in central Clerk's Office | SM mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALAN L. CURTIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 02 C 8653 |
| ) | |
| JO ANNE B. BARNHART, ) | Magistrate Judge Ian H. Levin |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | DOCKETED |
| Defendant. ) | OCT 2 2 2003 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Alan L. Curtis ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "SSA") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Before the Court are the parties cross-motions for summary judgment in the cause. For the reasons set forth below, the Court remands the cause for further proceedings consistent with this opinion.

## PROCEDURAL HISTORY

On May 14, 1998, Plaintiff applied for DIB alleging that, as of May 10, 1998, he became disabled.[1] (R. 69-71.) Plaintiff's application for benefits was initially denied on June 23, 1998. (R. 43-44, 47-50.) Subsequently, on December 14, 1998, Plaintiff's request for reconsideration was also denied. (R. 45-46, 51-54.) Plaintiff then filed a timely request for an administrative hearing and, on

---

[1] References are to the certified administrative record prepared by the Commissioner and filed with this Court pursuant to 42 U.S.C. § 405(g).

20

October 5, 1999, Plaintiff appeared with counsel and testified at a hearing before an Administrative Law Judge ("ALJ"). (R. 21-42, 57.) A Medical Expert also testified at the hearing. (R. 30, 34-42.)

On October 28, 1999, the ALJ issued his decision finding that Plaintiff was not disabled. (R. 11-18.) Plaintiff then filed a request for review of the ALJ's decision, and, on October 4, 2002, the Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision of the Commissioner. (R. 4-5) Pursuant to 42 U.S.C. § 405(g), Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

## BACKGROUND FACTS

### I. PLAINTIFF'S BACKGROUND/TESTIMONY

Plaintiff's allegations of disability are based *inter alia* on the following conditions: status post great left toe amputation, neck pain, joint pain, foot pain, and pain in his right shoulder, elbow and hand. (R. 26-27, 28-29, 36, 94, 125.)

Plaintiff was born on June 2, 1935, and was sixty-four years old at the time of the administrative hearing. (R. 24.) Plaintiff has an eleventh grade education. (R. 25.) Plaintiff has past relevant work as a pipe fitter. (R. 25.)

At the administrative hearing, Plaintiff testified that his great left toe had been amputated in February of 1953, as a result of a work-related accident. (R. 25.) Plaintiff stated that his left foot hurts and that the area where the toe had been removed gets raw and bleeds. (R. 26.) He indicated that he did not consult a physician about this problem because there is nothing that can be done for it. (R. 26.)

Plaintiff testified that if he is on his feet too long, his left foot aches and becomes painful, and even his right foot hurts. (R. 26-27, 28.) He stated that he stopped working because the pain

2

got to be too much. (R. 28.) Before he stopped working, Plaintiff indicated that he could only stand for four or five hours before he had pain and, by the end of the week, on Fridays, he could only stand for two or three hours before he began to hurt. (R. 35-36.) Plaintiff indicated that he takes aspirin, soaks his feet, and uses pads in his shoes (two in the left shoe and one in the right shoe) to help alleviate the pain. (R. 28, 33.) He reported, however, that aspirin is not very effective in relieving his pain. (R. 93.)

Plaintiff testified that his right shoulder, hand and neck were sore. (R. 28.) He stated that if he turned his shoulder the wrong way, it would hurt. (R. 36.) Plaintiff testified that even though he was right handed, he would use his left hand to pick things up. (R. 36.) He testified that his work required him to lift twenty to fifty pounds all the time, and possibly more (up to 100 pounds), in certain circumstances. (R. 36, 82.) Plaintiff also reported that his right hand aches even when he is not using it and that sometimes he is not able to turn the steering wheel of his car with his left arm. (R. 94.) He also testified that he had not seen a physician for his medical problems. (R. 26, 32, 36.)

Plaintiff also indicated, in a disability report he completed for the SSA, that he rode his bike in the summer, did home repairs, and worked on his computer. (R. 80.) Plaintiff also reported that he did yard work, maintained cars, and shopped twice a week. (R. 83.) He further indicated that he visited family and friends, did errands, and kept appointments. (R. 84.)

## II. MEDICAL EVIDENCE

On June 4, 1998, Dr. Dale Brink (treating physician) examined Plaintiff and completed an Arthritic Report for the Bureau of Disability Determination Services ("DDS"). (R. 97-98.) Dr. Brink reported that Plaintiff had an anatomical deformity (amputation of his great left toe) and bone destruction; however, he did not have any bone hypertrophy. (R. 97.) He indicated that Plaintiff's

great left toe amputation caused pain in his left foot and that there was a loss of joint motion where his toe had been amputated. (R. 97- 98.) Dr. Brink also reported that it was painful for Plaintiff to stand and carry out work-related duties. (R. 97.) He further indicated that Plaintiff's symptoms had gotten worse during the last one to two years. (R. 97.) Dr. Brink further noted that Plaintiff had an unlimited ability in handling (gross manipulation) and fingering (fine manipulation). (R. 98.) Moreover, Plaintiff had normal ambulation and was able to ambulate more than fifty feet without assistance. (R. 98.) Dr. Brink further reported that Plaintiff could carry out work requirements for short periods of time, but that he was unable to tolerate the pain he experienced when performing his full-time work as a pipe fitter. (R. 98.)

On June 9, 1998, Dr. Brink informed a disability claims adjudicator with the DDS that Plaintiff did not have any inflammation in the area where his toe had been amputated, but he did have a little redness and callus formation in that area. (R. 101.) Moreover, Dr. Brink indicated that Plaintiff did not have any swelling in his left foot and there was no limitation of motion with respect to his left ankle. (R. 101.) Dr. Brink further reported that he prescribed a customized shoe with a filler that would occupy the space where Plaintiff's toe was missing to help alleviate his pain. (R. 101.)

On June 17, 1998, Dr. José Luis Gonzalez, M.D., a state agency physician, reviewed Plaintiff's medical record and completed a Physical Residual Functional Capacity Assessment form. (R. 103-110.) Dr. Gonzalez opined that Plaintiff had no exertional limitations except that he was limited to occasional pushing and pulling with his lower left extremity due to pain where his great left toe had been amputated. (R. 104.) Dr. Gonzalez further indicated that with respect to Plaintiff's postural limitations, he could only occasionally climb ramps, stairs, ladders, ropes and scaffolds.

4

(R. 105.) Dr. Gonzalez thus concluded that Plaintiff should avoid those jobs that require more than occasional pushing and pulling with his lower left extremity and those that require more than occasional climbing. (R. 110.)

On November 24, 1998, Dr. Brink examined Plaintiff and completed another Arthritic Report for the DDS. (R. 111-12.) Dr. Brink reported essentially the same findings as he had in his previous report of June 4, 1998. (R. 97-98, 111-12.)

On January 27, 1999, Dr. Brink evaluated Plaintiff's condition and completed a Residual Functional Capacity Assessment form. (R. 113-20.) Dr. Brink noted that when he saw Plaintiff on June 4, 1998, Plaintiff stated that "his feet caused him pain by the end of the work day." (R. 114.) Plaintiff also reported, at the time, that his job required a lot of kneeling and climbing. (R. 114.) Dr. Brink further noted that there was no evidence to support his findings other than Plaintiff's job description and the biomechanical implications of Plaintiff's injury. (R. 115.) With respect to Plaintiff's postural limitations, Dr. Brink opined that Plaintiff could occasionally climb (i.e., ramps, stairs, ladders, ropes and scaffolds) and balance, but Plaintiff could never stoop, kneel, crouch, or crawl. (R.115.) Dr. Brink further noted that the severity of Plaintiff's symptoms was disproportionate to the expected severity or expected duration based on his medically determinable impairment(s). (R. 118.)

On February 24, 1999, Dr. James Bianchin, M.D., a state agency physician, noted that there was insufficient hard medical evidence to assess severity regarding Plaintiff and that the residual functional capacity on file was not acceptable as it does not define exertional level(s). (R. 121.) Dr. Bianchin recommended that a detailed orthopedic consultative examination be performed. (R. 121.)

On June 4, 1999, a state agency physician, assessed Plaintiff's ability to perform work-related

physical activities in a work setting. (R. 123-24.) The state agency physician opined that Plaintiff was not impaired in his ability to sit, lift, and carry. (R. 123.) Plaintiff, however, was only able to stand for five hours at a time and could only walk for one to two hours (without stopping) at a time. (R. 123-24.)

On June 6, 1999, Dr. Stanley Rabinowitz, M.D., performed a consultative examination (general medicine) of Plaintiff. (R. 16, 125-27.) Dr. Rabinowitz diagnosed Plaintiff as having bilateral foot pain of an undermined etiology, status post left great toe amputation that was well healed, and polyarthralgias (joint pain). (R. 127.) Upon examination, Dr. Rabinowitz found that Plaintiff's range of motion in his joints and spine were within normal limits. (R. 126.) Moreover, Dr. Rabinowitz determined that Plaintiff's extremities showed no signs of cyanosis (skin discoloration due to deficient oxygen in the blood), clubbing, ulcerations, edema or varicose veins. (R. 126.) Moreover, Plaintiff's reflexes were normal and his motor strength was intact. (R. 126.) Dr. Rabinowitz noted that Plaintiff's great left toe amputation was well-healed and he showed no signs of peripheral neuropathy. (R. 126.) Dr. Rabinowitz also indicated that it was unclear whether or not Plaintiff has bone spur formation or possible plantar fasciitis (inflammation of the soles of his feet). (R. 126-27.) Furthermore, Dr. Rabinowitz noted that Plaintiff was able to ambulate without the use of an assistive device. (R. 127.)

### III. MEDICAL EXPERT'S TESTIMONY

Dr. William Newman, M.D., an orthopedic surgeon, testified as a medical expert ("ME"), at the administrative hearing on October 5, 1999. (R. 30-42.) Initially, at the hearing, the ALJ asked Dr. Newman to give his opinion with respect to Plaintiff's statement that he is restricted to one to two hours of walking and can stand for only five hours at a time. (R. 30.) Dr. Newman responded

to the ALJ's question by stating, "Well, we do not have a work-up." (R. 30.) The ALJ next discussed Plaintiff's great left toe amputation and Plaintiff's aches and pains related to his shoulder, neck, and feet and concluded that, "[t]here is no laboratory work there, and there is no work-up in the file. So the medical evidence is lacking." (R. 30.)

Dr. Newman testified that he did not know what was causing Plaintiff's foot and shoulder pain and that he could not make a prognosis with respect to the pain because "we don't have objective evidence in the file." (R. 36.) Moreover, Dr. Newman stated that "[w]e don't even have x-rays, even on his foot, or his shoulder. We don't have any laboratory work relative to [inaudible] pain, so [inaudible] not there. First of all we have to know what's wrong with him." (R. 36.)

In addition, Dr. Newman indicated that an individual without a big toe would be impaired in running and climbing. (R. 37.) Plaintiff's loss of his big toe, however, has not precluded him from working on his feet all day and would not necessarily cause other problems. (R. 38.) Dr. Newman, however, did acknowledge that Plaintiff has "developed new symptoms for some reason. We don't have the reason [for these symptoms]." (R. 38.)

Dr. Newman testified that Plaintiff's gait would be affected by the lost of his big toe insofar as he would need to take shorter steps. (R. 38-39.) Dr. Newman further testified that you cannot compensate for the loss of your big toe, just as one cannot compensate for the loss of an eye, it is gone. (R. 39.) Moreover, Dr. Newman stated that Plaintiff did not stop working due to problems with his big toe amputation; rather, he stopped working because of aches and pains "for which we don't have a reason." (R. 40.) Dr. Newman further indicated that Plaintiff does not have any serious impairment(s). (R. 34.)

IV.   THE ALJ'S FINDINGS AND DECISION HEREIN

7

The ALJ determined that Plaintiff has not engaged in any substantial gainful activity at any time since May 10, 1998, the alleged onset date of his disabling condition. (R. 17.)

The ALJ found that the medical evidence establishes that Plaintiff suffers from a severe impairment; namely, status post left great toe amputation, but he does not have an impairment or combination of impairments listed in, or medically equal to one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. (R. 17.) Moreover, the ALJ determined that Plaintiff's aches and pains in his right shoulder and elbow areas constitute non-severe impairments. (R. 17.)

The ALJ determined that Plaintiff has the RFC to perform the exertional and non-exertional requirements of heavy work; except, he is limited in his ability to run or walk at a fast pace. (R. 17.) The ALJ further found that Plaintiff's impairments do not prevent him from performing his past relevant work as a pipe fitter. (R. 18.)

Accordingly, the ALJ determined that Plaintiff was not disabled under the terms of the Act. (R. 18.)

## LEGAL STANDARDS

### I. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited. The Act at 42 U.S.C. § 405(g) establishes that the Commissioner's findings as to any fact are conclusive if they are supported by substantial evidence. *See also Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Pearles*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Brewer*, 103 F.3d at 1390. The court may not reevaluate the facts, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *See Brewer*, 103 F.3d at 1390.

Conclusions of law, however, are not entitled to deference. Thus, if the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings. *See Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## II. STATUTORY AND REGULATORY FRAMEWORK

To receive disability benefits, SSI and DIB claimants must be "disabled" as defined by the Act. *See* 42 U.S.C. § 423(a)(1)(D); 42 U.S.C. § 1382(a); *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993). An individual is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). *See also Jones v. Shalala*, 10 F.3d 522, 523-24 (7th Cir. 1993). To satisfy this definition, an individual must have a severe impairment that renders him unable to do his previous work or any other substantial gainful activity that exists in the national economy. *See* 20 C.F.R. § 404.1505(a).

The Social Security regulations delineate a five-step process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. § 404.1520. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." 20 C.F.R. § 404.1520(b). If he is, the claimant is not disabled and the evaluation process is over; if he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. 20 C.F.R. Pt. 404, Subpt. P, App.1. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. *See Brewer*, 103

9

F.3d at 1391.

If the impairment does not so limit the claimant's remaining capabilities, the fourth step is that the ALJ reviews the claimant's RFC and the physical and mental demands of his past work. RFC is a measure of what an individual can do despite the limitations imposed by his impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). *See also* Social Security Ruling 96-8p (1996). If the claimant can perform his past relevant work, he will be found not disabled. *See* 20 C.F.R. § 404.1520(e).

For the fifth step, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant -- in light of his age, education, job experience and functional capacity to work -- is capable of performing other work and that such work exists in the national economy. *See* 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f). *See also Brewer*, 103 F.3d at 1391.

## ANALYSIS

Plaintiff seeks reversal or remand of the ALJ's decision finding that she is not disabled.

Upon review of the record, the Court finds that an outright reversal is not warranted. Separately, as it relates to remand, Plaintiff alleges *inter alia* that: (1) the ALJ failed to fully develop the record; and (2) the ALJ failed to properly assess Plaintiff's credibility or, alternatively, the ALJ failed to make a finding regarding Plaintiff's credibility. (Pl.'s Mem. at 3-4, 8-13.)

## I. THE ALJ HAS A DUTY TO DEVELOP A FULL AND FAIR RECORD.

Plaintiff argues that the ALJ failed to develop a full and fair record when he failed to order the necessary x-ray evaluations, laboratory work and orthopedic consultative examination. (Pl.'s Mem. at 3, 8-9.) Defendant, however, contends that the ALJ fully developed the record because

10

*inter alia* Dr. Rabinowitz performed a consultative examination of Plaintiff and found that Plaintiff's great left toe amputation wound was well-healed and that it was not necessary to order x-ray evaluations of Plaintiff. (Def.'s Mem. at 9.) Morever, Defendant asserts that the state agency reviewing physician did not indicate that additional evidence was needed in order to make a decision regarding Plaintiff's disability claim(s). (*Id.*) Furthermore, Defendant argues that there was sufficient evidence in the record for the ALJ to make his decision and Plaintiff's counsel did not object to the sufficiency of the record. (*Id.* at 9-10.)

Although a claimant has the burden of proving disability, "the ALJ has a duty to develop a full and fair record." *Smith v. Apfel,* 231 F.3d 433, 437 (7th Cir. 2000); *Thompson v. Sullivan,* 933 F.2d 581, 585 (7th Cir.1991)(*quoting Smith v. Secretary of Health, Education and Welfare,* 587 F.2d 857, 860 (7th Cir. 1978)("[i]t is a basic obligation of the ALJ to develop a full and fair record.") Failure to fulfill this obligation is good cause to remand for gathering of additional evidence. *Smith,* 231 F.3d at 437. How much evidence to gather is a subject on which the court "generally respect[s] the [ALJ's] reasoned judgment." *Smith,* 231 F.3d at 443 (*quoting Luna v. Shalala,* 22 F.3d 687, 692 (7th Cir. 1994)). "If the ALJ is able to weigh the record evidence and determine whether the claimant is disabled based on that evidence, then he is not required to obtain additional evidence." *Smith,* 231 F.3d at 443. *See also* 20 C.F.R. § 404.1527(c)(3)(the ALJ will try to obtain additional evidence if the evidence before him is insufficient to determine whether a claimant is disabled or, if after weighing the conflicting evidence, he cannot reach a conclusion).

The Court finds that based on the record the ALJ erred in his duty to fully develop the record. For example, Dr. Newman, ME, testified at the administrative hearing[2] that he did not know what

---

[2] It bears noting that the physicians Defendant cites all performed their work prior to the administrative hearing.

11

was causing Plaintiff's foot and other pain and that he could not make a prognosis because "we do not have a work-up" and "we don't have objective medical evidence in the file." (R. 30, 36.) Moreover, Dr. Newman stated that "[w]e don't even have x-rays, even on [Plaintiff's] foot, or his shoulder. We don't have any laboratory work relative to [inaudible] pain, so [inaudible] not there. First of all we have to know what's wrong with him." (R. 36.) Dr. Newman further testified that Plaintiff has "developed new symptoms for some reason. We don't have the reason [for these symptoms]." (R. 38.)

Given Dr. Newman's testimony and the fact that the Commissioner has the burden of fully developing the record, the ALJ should have, at a minimum, ordered the necessary x-ray evaluations and laboratory work, the orthopedic medical expert, Dr. Newman, testified was lacking. In fact, the ALJ even acknowledged during the ME's testimony that "[t]here is no laboratory work there, and there is no work-up in the file. So the medical evidence is lacking" as to the aches and pains Plaintiff testified he was experiencing in his shoulder and neck and both feet. (R. 30.)

Put otherwise, in view of the foregoing, and given Plaintiff's testimonial and record complaints of neck pain, joint pain, foot pain, and pain in his right shoulder, elbow and hand (R. 26-27, 28-29, 36, 94, 125), the ALJ should have fully developed the record to determine if Plaintiff does in fact suffer from any disabling impairment(s).[3] *See e.g., Smith v. Apfel*, 231 F.3d 433, (7th Cir. 2000)(case remanded for x-rays to ascertain the extent of the plaintiff's degenerative knee condition

---

[3]It also bears noting that it is well-established in Social Security law that an ALJ may not play doctor and substitute his own opinion for that of a physician, or make judgments that are not substantiated by objective medical evidence. *Rohan v. Chater*, 98 F.3d 966, 970-71 (7th Cir. 1996). In other words, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings. *Id.* Thus, by not ordering the necessary x-ray evaluations, laboratory work and orthopedic consultative examination, the ALJ substituted his own judgment for that of a medical expert or witness in determining that Plaintiff was not disabled.

because the record was insufficient for the ALJ to determine if the plaintiff was disabled); *Chapman v. Barnhart*, 189 F.Supp.2d 795, 804 (N.D. Ill. 2002)(case remanded for a consultative psychological examination of the plaintiff).

Accordingly, the Court finds that a remand on this issue is warranted.

## II. THE ALJ FAILED TO MAKE AN ADEQUATE CREDIBILITY FINDING.

Plaintiff asserts that the ALJ failed to properly assess Plaintiff's credibility with regard to his subjective complaints of pain. (Pl.'s Mem. at 3, 11.) Alternatively, Plaintiff contends that the ALJ did not discuss Plaintiff's credibility in his decision or make any credibility finding at all. (*Id.* at 11-12.) Defendant, on the other hand, asserts that the ALJ considered Plaintiff's subjective complaints of pain and limitations and reasonably concluded that they were not credible because they were not substantiated by the objective medical evidence. (Def.'s Mem. at 10-11.) In addition, Defendant contends that Plaintiff's statements regarding his daily activities contradict his allegations of disabling pain. (*Id.* at 11.)

An ALJ's credibility findings will not be overturned by a court unless they are "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). It is well-established, however, and it need be emphasized that the ALJ's written decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003)(*quoting* Social Security Ruling 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996)); *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003). In this regard, it is not sufficient for the ALJ to make a single, conclusory statement that "the individual's allegations have been considered"

13

or that "the allegations are (or are not) credible." *Golembiewski v. Barnhart,* 322 F.3d 912, 915 (7th Cir. 2003). It is also not enough for the adjudicator to simply recite the factors that are described in the regulations for evaluating symptoms. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Lopez,* 336 F.3d at 539 (*quoting Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000)). Thus, the ALJ is required to state which of plaintiff's complaints he rejected and why such complaints were unsupported by the record. *Clifford,* 227 F.3d at 872. If the ALJ's decision "is so poorly articulated as to prevent meaningful review," the case must be remanded to the Commissioner. *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002); *Lopez,* 336 F.3d at 540 (holding that the court was unable to trace the path of the ALJ's decision because the ALJ did not properly articulate reasons for a negative credibility finding and failed to provide an explanation for discrediting the plaintiff's testimony).

The Court initially notes that in his only reference to Plaintiff's credibility (in the body, not the Findings section, of the ALJ's decision), the ALJ only states, "After carefully considering the entire record, including the claimant's subjective complaints of disabling symptoms and limitations, the Judge concurs with Dr. Newman's opinion[4] and finds that a reasonable *conclusion* is that the claimant retains the capacity to perform the exertional and nonexertional requirements of a full range of heavy work, limited only by the exertional limitations of not being able to run or walk at a fast pace." (R. 16-17.)(emphasis added.) In these circumstances, the Court finds that the ALJ's conclusory statements regarding Plaintiff's credibility are insufficient as a matter of law because the ALJ has failed to articulate his basis for finding Plaintiff's complaints of pain and physical

---

[4]It bears mentioning that, as discussed *supra,* that Dr. Newman testified *inter alia* that he could not give a prognosis as to Plaintiff's pain because objective medical evidence is not present in the file and that there, relevantly, existed no x-rays and laboratory work as to the Plaintiff.

limitations not credible. For instance, the ALJ does not identify those specific statements made by Plaintiff that he finds are not credible and unsupported by the objective medical evidence in the case. Accordingly, the Court cannot trace the ALJ's reasoning because the ALJ has not made clear what weight he gave to Plaintiff's testimony and his reasons for that weight.[5]

Therefore, the Court finds that the ALJ failed to adequately follow the mandates of applicable regulatory and case law in assessing Plaintiff's credibility. In sum, a remand thus is warranted as to this issue. *See e.g., Zurawski*, 245 F.3d at 888.

## CONCLUSION[6]

In view of the foregoing, the Court grants Plaintiff's Motion for Summary Judgment or Remand insofar as it requests a remand and denies Defendant's Motion for Summary Judgment. Accordingly, the cause is remanded, pursuant to sentence four of 42 U.S.C. § 405, to the Commissioner for further proceedings consistent with this opinion.

---

[5]It bears noting that Defendant's counsel attempts to provide the Court with a *post hoc* rationalization for the ALJ's credibility finding by asserting that Plaintiff's subjective complaints of pain and limitations was not supported by the objective medical evidence. (Def.'s Mem. at 10-12.) However, respectfully, that is insufficient. *See e.g., Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003)("general principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ.") *See also Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)("But regardless of whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for [his] decision and [we] confine our review to the reasons supplied by the ALJ.")

[6]In view of the Court's ruling herein, it is deemed unnecessary to consider Plaintiff's and Defendant's other arguments raised herein.

ENTER:

_____
IAN H. LEVIN
U.S. Magistrate Judge

Dated: October 21, 2003